IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Gordon P. Gallagher

Civil Action No. 24-cv-0653-GPG-STV

ASCENT CLASSICAL ACADEMIES,

    Plaintiff,

v.

ASCENT CLASSICAL ACADEMY CHARTER SCHOOLS, INC. and
LANDS' END, INC. a/k/a LANDS END DIRECT MERCHANTS, INC.,

    Defendants.

**CORRECTED ORDER**

    Before the Court is the Motion to Dismiss the Three Federal Claims (Motion) (D. 23) filed by Defendant Ascent Classical Academy Charter Schools, Inc. (ACACS) and Defendant Lands' End, Inc. a/k/a Lands End Direct Merchants, Inc. (Lands End). For the reasons set forth below, the Court GRANTS the Motion.

**I. BACKGROUND**

    This is a business divorce case (D. 11). Plaintiff Ascent Classical Academies (Ascent) used to manage several public charter schools pursuant to contracts with ACACS (*id*. at 4, 7, 11, 15). Lands End supplied gear for ACACS' schools (*id*. at 30). Ascent brings various state law claims, including breach of contract, against ACACS (*id*. at 31, 34–37). Ascent also brings three federal claims: (1) Cybersquatting under 15 U.S.C. § 1125(d) against ACACS, (2) Federal Unfair Competition—Trademark Infringement and False Designation of Origin under 15 U.S.C.

1

§ 1125(a) against ACACS, and (3) Contributory Trademark Infringement under 15 U.S.C § 1114 against Lands End (D. 11 at 32–34).

Defendants seek dismissal of the three federal claims for failure to state a claim and asks the Court to decline supplemental jurisdiction over the state law claims (D. 23 at 1).

## II. LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true and interpreted in the light most favorable to the non-moving party, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## III. ANALYSIS

Defendants assert that ACACS owns all the relevant trademarks and trade names (D. 23 at 10). Ascent responds that the contracts were merely a "license to use" certain trade names, namely, "ASCENT CLASSICAL ACADEMY OF GRAND JUNCTION; ASCENT CLASSICAL ACADEMY OF NORTHERN COLORADO; and ASCENT CLASSICAL ACADEMY OF 27J" (D. 40 at 7–8).

The Court disagrees with all parties. The plain language of the parties' contracts grants ACACA an unlimited right to use the school names listed above. Because of this, Ascent does not have viable trademark claims against Defendants for the alleged acts, which involve using those names within the meaning of the contracts.

Ascent alleges that the first contract it signed with an entity that ultimately merged into ACACA stated in pertinent part:

> ASCENT hereby grants the School the non-exclusive, nontransferable license to use ASCENT's trade name and any trademark(s), as they now exist or in the future, to promote and advertise the School. No other use of ASCENT trademarks is permitted without ASCENT's prior written permission. The School shall acquire no rights in the ASCENT trademarks, and all goodwill of the ASCENT trademarks shall inure to the benefit of and remain with ASCENT. ASCENT shall have pre-approval rights for each form and manner of public display of the ASCENT Trademarks. However, the name "Ascent Classical Academy of Douglas County" shall be a trade name of the School, and the School shall have the right to use the same after termination of this Agreement without additional compensation to ASCENT.

(D. 11 at 4; D. 23-1 at 6–7). Ascent alleges its other contracts with ACACS related to the other schools were "essentially identical" or "essentially the same in all relevant terms" to the first agreement, simply including different school names (*id.* at 7, 15). The Court, therefore, presumes the above provision or an equivalent is found in all the relevant contracts.

Under Colorado law, the interpretation of a written contract is a question of law for the courts, which "determine[s] and give[s] effect to the intent of the parties." *People ex rel. Rein v. Jacobs*, 465, P.3d 1, 11 (Colo. 2020). The parties' intent is to be determined from the language of the written contract itself, read as a whole, and not by reading its provisions in isolation. *Klun v. Klun*, 442 P.3d 88, 92 (Colo. 2019). Colorado courts have made clear that "courts may not rewrite clear and unambiguous contract provisions." *Bledsoe Land Co. LLLP v. Forest Oil Corp.*, 277 P.3d 838, 842 (Colo. App. 2011). Nor can the courts "write [a] phrase into the contract." *Andres Trucking Co.*, 488 P.3d at 433; *see also Am. Indus. Leasing Co. v. Costello*, 418 P.2d 881, 884 (Colo. 1966) ("[C]ourts must pass upon contracts as written, not as if they contained language which might or should have been used."); *Providence Washington Ins. Co. v. Gulinson*, 215 P. 154, 156 (Colo. 1923) ("Contracts should be enforced as they are made."). When a written contract

is free from ambiguity, it is deemed to "represent the parties' intent and enforced based on the plain and generally accepted meaning of the words used." *Sch. Dist. No. 1 v. Denver Classroom Teachers Ass'n*, 433 P.3d 38, 41 (Colo. 2019) (citation omitted). Where a court finds ambiguity, any ambiguity in the contract is construed against the drafter. *Globe Nat. Bank v. McLean*, 269 P. 9, 10 (Colo. 1928); *see also Young v. Fidelity Union Life Insurance Co.*, 597 F.2d 705, 707 (10th Cir. 1979) (citing *Unigard Insurance Co. v. Studer*, 536 F.2d 1337, 1339 (10th Cir. 1976)).

For clarity and because of the interaction between the sentences of the above provision, the Court interprets it sentence-by-sentence.

> ASCENT hereby grants the School the non-exclusive, nontransferable license to use ASCENT's trade name and any trademark(s), as they now exist or in the future, to promote and advertise the School.

This is an extremely broad license grant to ACACS (the "School")[1] of Ascent's "trade name" and "any," and therefore all, of Ascent's "trademark(s)[] as they now exist or in the future." This license grant is limited only by field of use, namely, "to promote and advertise the School."

> No other use of ASCENT trademarks is permitted without ASCENT's prior written permission.

This provision simply emphasizes the field of use limitation with respect to the trademarks.

> The School shall acquire no rights in the ASCENT trademarks, and all goodwill of the ASCENT trademarks shall inure to the benefit of and remain with ASCENT.

---

[1] Defendants attach a copy of the contract to their Motion (D. 23-1). The Court will consider this evidence without converting the motion to one for summary judgment because the contract is referred to in the complaint, its authenticity is not in dispute, and it is central to Plaintiffs' claims. *See Cnty. of Santa Fe, N.M. v. Public Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002). The contract defines "School as "Ascent Classical Academy of Douglas County" (D. 23-1), which Ascent alleges merged with other relevant entities to form ACACS as noted above (D. 11 at 7).

This provision clarifies that only a license for the particular field of use is granted. No ownership or other rights in trademarks are conveyed.

> ASCENT shall have pre-approval rights for each form and manner of public display of the ASCENT Trademarks.

This is a contract right giving Ascent a right to preapproval of any "public display," but only of its trademarks.[2] There is no provision in the contract requiring preapproval for the license to attach. Thus, this is only a contract right that can be vindicated through a breach of contract claim, not a trademark right.

> However, the name "Ascent Classical Academy of Douglas County" shall be a trade name of the School, and the School shall have the right to use the same after termination of this Agreement without additional compensation to ASCENT.

This sentence is an exception to the earlier sentences regarding ownership and with respect to the use of the school's name. It makes explicit that the trade name "Ascent Classical Academy of Douglas County" is owned by ACACS, i.e., "a trade name of the School," and that no further compensation will ever be required for any necessary transfer of the relevant rights. Further, in the context of the contract as a whole, this sentence provides ACACS an unlimited right to use the identified name.[3] The intent of this provision is clear—regardless of any intellectual property owned by Ascent discussed previously, it gives "the School" assurance of the right to use its name regardless of whether or not it continues its relationship with Ascent. Indeed, it makes ACACS' right to use the identified name irrevocable by specifying that it will continue even "after

---

[2] The parties state that the term "ASCENT Trademarks" is not a defined term. The Court finds that it refers to the trademarks licensed in the first paragraph.

[3] The Court finds the term "the same" refers to the antecedent "name" and is not limited to "trade name."

termination of this Agreement." Ascent's trademark claims unambiguously run contrary to the rights guaranteed to ACACS in the contracts by seeking to prevent the schools' ability to use their names freely.

Particularly in the context of the name for a school and in the context of the contract as a whole, Ascent's argument that it maintains any right to prevent the schools from using the identified names or portions thereof as school names through the assertion of intellectual property rights or otherwise is untenable. This argument and Ascent's related claims necessarily depend on the broad grants of rights to *use* the school *names* being limited in a way that runs contrary to the plain language of the contract, which contains no limitations.[4] Under ACA's limited reading of the grant of rights, the schools would only retain the right to use the exact identified name as a trade name to identify the school. But this is not the name of, for example, a candy bar. It is the name of an institution, namely, a school. Unvaried reproduction of a full legal name is not and has never been how school names are used and cannot have been the intent of the parties at the time the contract was signed. Like the schools under Ascent's and ACACS' umbrellas, schools customarily identify themselves by only a portion of their name and do so without confusion. There are countless schools across the county and even in individual states referred to as, for example, "Central," with school gear bearing only that one word even though that is not the full

---

[4] Dictionary definitions of "use" support this conclusion, particularly where use is used as a verb in reference to a name as it its here. Use of a name includes official names, titles, adopted names, and nicknames. USE, *Oxford English Dictionary* ("*transitive*. To adopt, go by, or assume (a title or specific name)"), available at https://www.oed.com/dictionary/use_v?tab=meaning_and_use#16014744; *see also* USE, Black's Law Dictionary (12th ed. 2024) ("1. To employ for the accomplishment of a purpose; to avail oneself of <they use formbooks>. 2. To put into practice or employ habitually or as a usual way of doing something; to follow as a regular custom <to use diligence in research>.").

legal name of any school. ACACS' unlimited, irrevocable right to use its identified names must necessarily include the right to do likewise.

Other language in the contract, such as the limited termination provisions requiring no change in the schools' identification, reinforces the Court's interpretation of the relevant terms and supports that the parties intended the schools to be able to identify themselves in the same ways after the end of the contract. Had Ascent wanted the schools to rebrand if they ceased their association with Ascent, such a term could have been included in the contracts. Instead, Ascent did the opposite, guaranteeing the schools a right to continue to use their names without harassment even after contract termination.

There are no allegations in the complaint that Defendants have ever used any of Ascent's alleged trademarks[5] for any purpose other than to name and identify ACACS and its various schools specified in the contracts. Because it has been granted a broad irrevocable right to use the names by Ascent, ACACS cannot violate Ascent's alleged trademark rights or other remaining rights by doing so. That is the benefit of the bargain contained in the plain language of the contract. For the same reason, ACACS using a school's name or a portion thereof in a domain name containing the same cannot violate Ascent's rights. Thus, the cybersquatting claim is not viable. Likewise, the allegations regarding Lands End explicitly refer to use of the relevant marks for permitted purposes, namely, "apply[ing] the Infringing Marks to various retail products to be

---

[5] Because the Court resolves the Motion based on contract interpretation, it does not reach the issues of whether Ascent, ACACS, or both acquired trademark rights in any of the alleged marks or whether there is a likelihood of confusion. Although it is unclear that it does so, to the extent Ascent brings claims limited to use of only its logos without a school name, those claims would fail because Ascent does not plausibly allege that Defendants have used any logos that present a likelihood confusion with its alleged logo marks (D. 11 at 28–31; *compare* D. 11-1 *with* D. 23 at 7).

purchased by the public, generally, and ACACS's parents and students, specifically" (D. at 30). Creating school swag as alleged is using the schools' names within the meaning of the contracts. The Court dismisses Ascent's federal claims.

The Court has disposed of all of Plaintiffs' federal law claims, over which this Court has original subject-matter jurisdiction pursuant to 28 U.S.C. § 1331. The remaining claims are brought under state law, which implicates this Court's supplemental subject-matter jurisdiction under 28 U.S.C. § 1367. Under 28 U.S.C. § 1367(c)(3), when all the "federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998). Accordingly, the Court grants the Motion and dismisses the remaining state-law claims without prejudice for lack of subject-matter jurisdiction.

## IV. CONCLUSION

Accordingly, it is ORDERED that Motion to Dismiss Defendant the Three Federal Claims (D. 23) is GRANTED. It is FURTHER ORDERED that the Clerk of the Court shall close this case.

DATED March 19, 2025.

BY THE COURT:

Gordon P. Gallagher
United States District Judge